**049-15**

ORIGINAL

IN THE

COURT OF CRIMINAL APPEALS OF TEXAS

WENFORD LETTSOME, Petitioner,

v.

THE STATE OF TEXAS, Appellee.

RECEIVED IN
COURT OF CRIMINAL APPEALS

MAR 20 2015

Abel Acosta, Clerk

FOR THE

COURT OF APPEALS - FIRST DISTRICT OF TEXAS

CAUSE NO. 01-13-00532-CR

FILED IN
COURT OF CRIMINAL APPEALS

MAR 20 2015

Abel Acosta, Clerk

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 01347045

PETITION FOR DISCRETIONARY REVIEW

Petitioner Pro-se, _Wenford Lettsome_
Wenford Lettsome
T.D.C.J.-ID, No. 01864369
Dalhart Unit No. 072
11950 FM 998
Dalhart, Texas 79022

I

# TABLE OF CONTENTS

| | PAGES: |
|---|---|
| Announcement — Petition For Discretionary Review | I |
| Table Of Contents | II |
| Table Of Authorities And Statutes Used | III |
| List Of Interested Parties | IV |
| Oral Argument | IV |
| Statement Of Case And Procedural History | V |
| Statement of Facts | V |
| Memorandum — Petition For Discretionary Review | 1 |
| Ground One: | 1 |
| Facts: | 2 |
| Argument Ground One: | 3 |
| Ground Two: | 11 |
| Facts: | 11 |
| Argument Ground Two: | 11 |
| Prayer | 13 |
| Certificate Of Service | At Rear |
| Sworn Declaration | At Rear |
| Affidavit Of Wenford Lettsome | At Rear |
| Motion To Suspend The Rule, Rule 2 | At Rear |

II

## TABLE OF AUTHORITIES

| | PAGES: |
|---|---|
| Albrecht v. State, 486 S.W. 2d 97 (Tex. Crim. App. 1972) | 9 |
| Bell v. State, 233 S.W. 3d 583 (Tex. App. - Waco 2007) | 8,9 |
| Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963) | 8 |
| Cleary, McCormick on Evidence, § 190 (3d ed. 1994), at 558 | 9 |
| De La Paz v. State, 901 S.W. 2d 571 (App. 8 Dist. 1995, P.D.R. ref'd.) | 6,13 |
| Glover v. U.S., 531 U.S. 198, 204 (2001) | 12 |
| Guerrero v. State, 820 S.W. 2d 378, 385 (Tex. App. Corpus Christi 1991, pet. ref'd.) | 8 |
| Jackson v. Virginia, 443 U.S., U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed. 2d 560 (1979) | 4 |
| Johnson v. State, 803 S.W. 2d 272, 292 (Tex. Crim. App. 1990) cert. denied .... | 8 |
| McFarland v. State, 845 S.W. 2d 824 | 9 |
| Montgomery v. State, 810 S.W. 2d 372 at 387 | 9,10 |
| Morgan v. State, 692 S.W. 2d 877, at 879 (Tex. Cr. App. 1985 | 9 |
| Payal v. Hollings, 261 F.3d 210, 228 (2d Cir. 2001) | 13 |
| Rickman v. Bell, 131 F.3d 1150, 1156-60 (6th Cir. 1997) 265 F.3d 372, 384 | 13 |
| Smith v. Robbinson, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed. 2d 756 (2000) | 13 |
| State v. Mayorga, 901 S.W. 2d 943 (Tex. Crim. App. 1995) at 944, 945-946 | 8 |
| Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed. 2d 674, 689, 694 | 12 |
| Strickland v. Washington, 466 U.S. 668, at 687, 104 S.Ct. 2052 at 2064 | 12 |
| Victor v. State, 874 S.W. 2d 748 (Tex. App. - Houston [1st. Dist.] 1994) | 4 |
| Walk v. State, 841 S.W. 2d 430, 535 (Tex. App. Corpus Christi 1992, pet. ref'd.) | 8 |
| Wong Sun v. U.S., 371 U.S. 471, 487, 488, 83 S.Ct. 407, 417, 9 L.Ed. 2d 441 (1963) | 8,13 |
| Zilleder v. State, 557 S.W. 2d 515 (Tex. Cr App. 1977) | 9 |
| 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed. 2d 1078 | 8 |

## STATUTES USED:

| | |
|---|---|
| Family Code: 71.005 | V. |
| Tex. Code of Crim. Proc., 38.22 § 2 (a)(1-5) | 6,13 |
| Tex. Code of Crim. Proc., 38.23 (a) | 6,8,13 |
| Tex. Const. I, § 10 | 1,7 |
| Tex. Const. I, § 19 | 1,7 |
| Tex. Penal Code Ann. Art. § 22.01 (a)(2)(b)(2)(A) | II, 3, 10, 12, 13 |
| Tex. Penal Code Ann. Art. § 22.02 (a)(1) | V, II, 3, 4, 10, 12 |
| Tex. R. App. Proc., Rule 44.2 (a) | 8, 9 |
| Tex. R. App. Proc., Rule 52 (a)   And Rule 68. | 1, 8 |
| Tex. R. App. Proc., Rule 81 (b)(2) | 10 |
| Tex. R. of Evid., Rule 105 (a) | 9 |
| Tex. R. of Evid., Rule 403 | 10 |
| Tex. R. of Evid., Rule 404 (b) | 9, 10 |
| U.S. 4Th Const. Amend. | 1 |
| U.S. 5Th Const. Amend. | 1, 7 |
| U.S. 6Th Const. Amend. | 11 |
| U.S. 14Th Const. Amend. | 1, 7, 11 |
| Criminal Law Key 394.5 (4) (Court is required to instruct) | 6 |
| Criminal Law Key 394.6 (5) (Judge exclusive trier of fact in Motion to Suppress hearing) | 6,7 |
| Criminal Law Key 777 (Court is required to instruct) | 6 |
| Criminal Law Key 1158 (4)(Facts supported by record remain except abuse of discretion) | 6 |

III.

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

WENFORD LETTSOME, #01864369
    Petitioner,

Vs.

THE STATE OF TEXAS
    Appellee.

## LIST OF INTERESTED PARTIES

Wenford Lettsome,    Petitioner Pro-se
TDCJ-ID No. 01864369
Dalhart Unit No. 072
11950 FM 998
Dalhart, Texas 79022-7624


Court Of Criminal Appeals Of Texas
P. O. Box 12308, Capitol Station
Austin, Texas 78711


First Court Of Appeals
301 Fannin Street, Rm. 208
Houston, Texas 77002

## ORAL ARGUMENT:

<u>Request Oral Argument</u> regarding the failure of the Officer rendering defendants Miranda Rights; and Penal Code § 22.01(a)(2)(b)(2)(A) not being ambiguous against Penal Code § 22.02 (a)(1) - erroneous rulings, If arrest was not perfected by not invoking Miranda Rights then Warrant for arrest was not Properly Served - Then there is no probable cause for erroneous arrest or seizure.

IV

## STATEMENT OF CASE
## AND PROCEDURAL HISTORY

Petitioner, Wenford Lettsome, Pro-se, Trial Court Cause No. 01347045, Arrested on or about May 6, 2012, Texas Penal Code § 22.02 (a)(1)—("did then and there unlawfully intentionally and knowingly threaten Elleston Lettsome, a Complainant, with imminent bodily injury by using and exhibiting a deadly weapon, namely, A Machete."). And a prior Conviction on November 23, 2010—Cause No. 1211279, District Court of Harris County, Texas for Allegedly, a felony offense of Unlawful Restraint, Family Code: 71.005, assault on a household member; Petitioner Appealed Case No. 01-13-00532-CR, conviction was affirmed; He Now submits Petition For Discretionary Review. Appellant's Conviction was upheld or affirmed on December 18, 2014, On Appeal.

## STATEMENT OF FACTS

Petitioner, Wenford Lettsome, Pro-se, being convicted of the charge alleged in the indictment Cause No. 01347045, and based on the predicate of his Prior Conviction, Trial Court commenced on June 10, 2013. The State called Complainant Elleston Lettsome and Alphonsine Lettsome, to testify on the question, "Did Wenford Lettsome threaten you with a Machete?" And, the answer was nonresponsive, from both he and his wife. See R.R. Vol. 3 of 6, Pg. 132:13-25 Through 133:1 (("Objection; Judge—Sustained; as Narrative;")) and R.R. Vol. 3 of 6, Pg. 134:2-25 ("Objection; Judge—Sustained; as Nonresponsive;")) and R.R. Vol. 3 of 6, Pg. 57:10-19: (":10 Q. Threats? :11 A. He never talk threats to me. :14 Q. He wouldn't threaten you every time? :15 A. I don't think so. :17 Ms. Summers: Objection Your Honor. Asked and Answered. :19 The Court: Sustained. Next question."); On R.R. Vol. 3 of 6, Pg. 172:10-16: (: 12 Ms. Summers: I have a motion for an instructed verdict. I believe the State has failed sufficient evidence for a reasonable jury to convict this defendant beyond a reasonable doubt. :16 The Court: It's denied.

V

## JURISDICTION

This Court has the jurisdiction to entertain this writ (P.D.R.) under the authority of the Rules of Appellate Procedure, Rule 68.

## IN THE COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| WENFORD LETTSOME, # 01864369<br>  Petitioner,   Pro-se, | § | COURT OF APPEALS |
| | § | FIRST DISTRICT OF TEXAS |
| Vs. | § | CAUSE NO. 01-13-00532-CR |
| THE STATE OF TEXAS<br>  Appellee. | § | |

### MEMORANDUM :

### PETITION FOR DISCRETIONARY REVIEW

## TO THE HONORABLE JUSTICES IN THE COURT OF CRIMINAL APPEALS:

COMES NOW, Wenford Lettsome, Petitioner, Pro-se, with his Petition For Discretionary Review challenging Constitutional Issues that went unaddressed and unchallenged at Pretrial, trial court, and on Petitioner's Appeal.

### GROUND ONE:

U.S. 4th, 5th, 14th Constitutional Amendments To (Due Process); State Constitution I, § 10 (Due Process), I, § 19 (Due Course); Prosecutorial Misconduct—Inadmissible Evidence: Illegal Search And Seizure; (Equal Protection Of The Laws.); Abuse of Discretion; Police failed to render Defendant's Miranda Rights.

-1-

<u>FACTS</u>: Petitioner, Wenford Lettsome, defendant, pro-se, contends and argues that he is actually innocent of the alleged charged offense set out in the indictment, Id., Cause No. 01347045. When complainant Elleston Lettsome made the complaint at the police station, it was Three days to two weeks prior to an alleged argument, and arrest, on or about May 6, 2012. The police had a warrant and probable cause for defendant's arrest, but, police didn't have a warrant to search and seize a "Machete" from defendant's house to be used for alleged evidence - based on probable cause and for good cause - such was not set out in the arrest warrant only. The police acted to retrieve a machete at Petitioner's house in an illegal search and seizure and for a weapon, against defendant at a time when the alleged Machete was not in plain sight, but was stored in its same place for years. The State acted in Prosecutorial Misconduct to have had the alleged evidence admitted into trial court, namely the "Machete" as an alleged deadly weapon. The alleged machete was used as evidence when it was not part of a crime, was inadmissible. Petitioner never had a "Machete" on his person during any alleged argument with complainant; and the First Court of Appeals did confirm that fact. Petitioner had never caused an injury in this cause, nor a death, or a serious bodily injury, or imminent bodily injury on or to the complainant. At trial court, the State's Penal Code was in error, and misapplied use of (same) statute. This case is based on the predicate of said prior alleged offense in the enhancement paragraph cause No. 1211279 of an alleged unlawful restraint; also Petitioner's Texas Penal Code should have been a Third Degree Felony and Punishment instead of Second Degree Punishment.

-2-

# GROUND ONE
## ARGUMENT

**PROSECUTORIAL MISCONDUCT :**

   Petitioner, Wenford Lettsome, contends and argues that he is Actually innocent of violating the law that Petitioner is accused of, the State failed to process the correct Texas Penal Code on the indictment. The Penal Code used has gone past the proper range of of punishment, the ambiguous difference between the two statutes that do not apply and where one statute attempts to compensate for the other wher they are not reconcilable to this particular accusation, Texas Penal Code Ann. Art. § 22.02 (a)(1) <u>is aggravated Assault</u> against <u>a spouse</u> or <u>Serious Bodily Injury</u> - is a <u>Second Degree Felony</u> Offense. The difference is Texas Penal Code Ann. Art. § 22.01 (a)(2)(b)(2)(A) to which is the desired alleged statute, (a)(2) intentionally and knowingly <u>threatens another with imminent bodily injury</u>; and <u>(b)</u> An offense under Subsection (a)(1) is a Class A Misdemeanor, <u>except</u> <u>that the offense is a felony of the third degree</u> if the offense is committed against: (2) a member of the defendant's <u>family or</u> <u>household</u>, if it is shown on the trial of the offense that the <u>defendant has been previously convicted</u> of an <u>offense against a</u> <u>member of the defendant's family or household under this section.</u> Petitioner contends that the indictment contain a paragraph of unlawful restraint against a family member. Further, <u>the State</u> <u>would have to prove</u> that there was <u>a weapon used</u> in the offense in order for the weapon to be admissible—<u>otherwise there is</u> <u>no weapon used in the offense,</u> this case is based on this point. The testimony from State's witnesses showed that <u>the alleged</u> weapon "machete" was inadmissible —meaning <u>there was no weapon</u> and the Texas Penal Code Ann. Art. § 22.01 (a)(2)(b)(2)(A) <u>is a third</u>

-3-

<u>Argument Ground One Continued:</u>

<u>degree felony</u>. <u>Elleston Lettsome</u> — Complainant in this case, only has the same last name as defendant they are not biological family, however, Family Code include "Household" where that part of the statute is correct as Family Code: 71.005 (household member). The (a)(1) in Texas Penal Code 22.02 failed to have serious bodily injury or a spouse and <u>this case can not be aggravated because there is no weapon</u>. See <u>Victor v. State</u>, 874 S.W.2d 748 (Tex. App.-Houston [1st. Dist.] 1994) (The State had to establish that the knife [Machete] was sufficient to have it admitted into trial court which would prove the state's burden on the element [deadly weapon and serious bodily injury] <u>in order to infer that the alleged threat was aggravated</u> in order to get to Texas Penal Code § 22.02 (a)(1)). See <u>Jackson v. Virginia</u>, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). (sufficiency of the evidence was insufficient). The State could not and did not prove its burden of all elements as in <u>Victor v. State</u>, Id., (circumstances surrounding the alleged weapon that was tried to prove sufficiency of the evidence and failed). The questions were adduced were, "could the knife be long enough," could the knife cause death," could the knife cause serious bodily injury, what was the knife made for, did defendant possess the knife in his hand at the time of the alleged offense, did defendant make threatening motions with the knife?" Petitioner contend that at trial on guilt-innocence - the State attempted to frame the same questions and answers in order to have the alleged "Machete" admitted, however, state's witnesses failed to prove the necessary elements for the State to prove its burden. ¶ Petitioner contends there is and was "<u>Reasonable Doubt</u>," that the State's witnesses did not know allegedly when or if defendant allegedly threatened complainant with an alleged machete, see R.R. Vol. 3 of 6, Pg. 154-157, Id.; that

-4-

## Argument Ground One Continued:

Pg. 154:1-4, :1 uncomfortable. He _might_ just take the machete, chop me for real or chop my wife open. My wife just continued to tell me she's scared of this situation. _And he's sleeping in the house._ ....
Reasonable Doubt - Petitioner contends that complainant's thoughts and feelings have nothing to do with threats, but only facts that they are uncomfortable. Also, that complainant's wife wrote the complaint and she had complainant sign it. R.R. Vol. 3 of 6, Pg. 151-152:6; There is a reasonable doubt because the alleged machete belongs to defendant's mother, Lenora Penn, and the house belongs to Lenora Penn, and not Wenford Lettsome, even though the alleged machete was stored in its usual storage place in the house. R.R. Vol. 3 of 6, Pg. 48:4-5, :4 Q. But it was her house? :5 A. This was her house, yes.. State's witness - defendant's brother - _Perseus Penn testified_, R.R. Vol. 3 of 6, Pg. 97:6-22, :6 Q. (By Mr. Tallichet) Who does the machete belong to? :8 A. The machete belongs to my mother. His mother is Lenora Penn; and :13 _A. Sometimes I use it._; and R.R. Vol. 3 of 6, Pg. 83:1-11, :6 Q. All you really know is this is the _machete that belonged to Mr. Lettsome_, correct? :8 A. _Yes, ma'am._ Perseus Penn testified, R.R. Vol. 3 of 6, Pg. 112:9-10, :9 Q. Okay. He didn't make a _chopping motion_? :10 A. _No, he didn't make a chopping._ Petitioner Wenford Lettsome never testified that he allegedly made the threat of chopping complainant, and he never had the alleged machete on his or in his possession. In the Court of Appeals - Page 2-3, Memorandum Opinion - On Background, [ ("The complainant Elleston Lettsome testified that, "appellant had previously threatened the complainant," "however, _appellant did not have a weapon on him at the time he made the threat._")]. Officer Rodney Chaison, Jr., did not have a Search Warrant that contained Probable Cause for Search and Seizure of the alleged Machete from defendant's mother's house when he failed to read defendant his Miranda Rights. _This Is Reasonable Doubt To "No Weapon."_

—5—

## Argument Ground One Continued:

Police officer failed to read defendant his Miranda Rights; Tex. Code Crim. Proc, Ann. Art. 38.22 § 2(a)(1-5) and defendant did not waive his rights on Miranda. This required, Criminal Law Key 777: Trial court is required to instruct jury to resolve factual disputes over whether evidence was illegally obtained and therefore inadmissible only if there is a factual dispute as to how evidence was obtained; absent such factual dispute, trial court may properly refuse such a charge. Vernon's Ann. Texas Code of Criminal Procedure 38.23. See De La Paz v. State (App. 8 Dist. 1995, P.D.R. 901 S.W.2d 571, ref'd.) (Police officer in De La Paz v. State had a search warrant); In this case at bar, (Defendant has burden of defeating presumption of proper police conduct by establishing that search and seizure occurred without warrant—defendant has met his burden). See Criminal Law Key 394.5(4). Trial court error in failing to instruct jury that no adverse inference may be drawn from defendant's failure to testify was not harmless in punishment stage of trial. Criminal Law Key 1158(4) Trial court's factual findings are supported by record, and findings will not be disturbed absent clear abuse of discretion. Judge failed to consider that alleged Machete belong to Lenora Penn and not Wenford Lettsome; Judge failed to consider that Officer Rodney Chaison, Jr., failed to read defendant's Miranda Rights U.S.C.A. Const. Amend. 4; these disputes on how the evidence was obtained shows that the Judge abused his discretion in not ruling that the law require the evidence to be inadmissible based on this case. See R.R. Vol. 3 of 6, Pg. 83-84:1-10 :24 point in time, if he is in custody and he's asking questions relative to this offense, that there could be :1 a miranda problem or a 38.22 problem. :5 The Court: Yeah, but asking any questions -- I mean, that's -- she objected to that, but did he Mirandize him? :8 Mr. Tallichet: I don't think they did. And The Answer to the objection went unanswered, (no overruled-no sustained). Criminal Law Key 394.6(5): Trial judge is sole and exclusive trier of fact

-6-

## Argument Ground One Continued:

at hearing on motion to suppress. Prosecution violated The Defensive Motion In Limine to which is a U.S. 14th Constitutional Amendment violation as well as a State Constitution I,§10 (Due Process-Fundamental Unfair Trial); I,§19 (Due Course); U.S. 5th Constitutional Amendment ["nor Shall any person be subject for the same offense to be twice put in jeopardy of life or limb; nor Shall be compelled in any criminal case to be a witness against himself; nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."]; the State did solicit Testimony from State's witnesses, 1. Complainant Elleston Lettsome, "R.R. Vol. 3 of 6, Pg. 154:23 A. He was just through -- got arrested." ; RR. Vol. 3 of 6, Pg. 48:7-19, :7 A. I don't remember that. I think we moved in the :8 first time when he got in trouble -- :9 Ms. Summers: Objection, Your Honor. :10 Nonresponsive. :15 The Court: Sustained. :16 The jury will disregard the last statement :17 by the witness. :18 Ms. Summers: Move for a mistrial. :19 The Court: Denied.. (Testimony of Alphonsine Lettsome-Complainant's wife). R.R. Vol. 3 of 6, Pg. 155:5-25 Through Pg. 157:1-7, :5 Ms. Summers: Objection to the violation of motion in limine. :7 Mr. Tallichet: I've instructed all these witnesses not to talk about that. :9 The Court: They're not listening to you, so ... : The Court: I sustained the objection to the answer, but I don't think it -- so, anyway, I sustained the objection to the answer. Pg. 157 :1-7 :1 of the motion in limine with the witness who currently on the stand with my appellate division and with my client, I am electing for strategy reasons not to request the Judge to instruct the jury to disregard or to request a mistrial at this point in time because I feel like it would focus more attention on the statement that was made. And that's -- . Pg. 172:12-16, :12 Ms. Summers: I have a motion for an instructed verdict. I believe the State has failed to

## Argument Ground One Continued:

:14 present sufficient evidence for a reasonable jury to convict this defendant beyond a reasonable doubt. :16 The Court: It's denied. Petitioner contends that because the _Motion In Limine was violated,_ Id., On S.O.F., Pg. 155-156 and Pg. 48- it was obviously apparent that the jury would not and could not be able to disregard The State's error and the State's Witnesses. _The error was properly preserved._ See Johnson v. State, 803 S.W. 2d 272, 292 (Tex. Crim. App. 1990) cert. denied 501 U.S. 1259, 111 S.Ct. 2914, 115 L.Ed. 2d 1078; Walk v. State, 841 S.W. 2d 430, 435 (Tex. App. -Corpus Christi 1992, pet. ref'd.). See also Guerrero v. State, 820 S.W. 2d 378, 385 (Tex. App.-Corpus Christi 1991, pet. ref'd.) Tex. R. App. Proc. 52(a) and Tex. R. App. Proc. Ann. art. § 44.2 (a) (Reversible Error _In_ Criminal Cases)(Harm Analysis). see _Brady v. Maryland,_ 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed. 2d 215 (1963); Wong Sun v. U.S., 371 U.S. 471, 487, 488, 83 S.Ct. 407, 417, 9 L.Ed. 2d 441 (1963) (holding that evidence derived from an illegal act cannot be used at trial) see also Tex. Code Crim. Proc. Ann. Art. § 38. 23 (a) (Vernon's 2005) ("No evidence obtained by an officer or other person in violation of any provision of the constitution or laws of the state of Texas, or of the constitution or laws of the United States of America, shall be admitted in evidence against the accused on trial of any criminal case.

In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has a reasonable doubt that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.") namely, _Petitioner contends [S.O.F. Pg. 48:7-19; 154:23 Id.]_ violations; See State v. Mayorga, 901 S.W. 2d 943 (Tex. Crim. App. 1995) (plurality op.) (Authorized by judge-Suppressed the evidence and testimony in motion -Id., at 944-945. Violation reversing the trial court because the police initially acted illegally. Id., at 945-946) Pg. 588 Bell. See Bell v.

-8-

## Argument Ground One Continued:

State, 233 S.W. 3d 583 (Tex. App. - Waco 2007). See _McFarland v. State_, 845 S.W. 2d 824 (Tex. Cr. App. 1992) 14. Criminal Law key 1043(3): Alleged error in allowing reference to extraneous offense of drug dealing was not preserved for review, where there was no timely and sufficiently specific objection regarding extraneous offenses; objection that was propounded immediately after mention of "drugs" was only directed to nonresponsive nature of answer of witness. Rules of Evidence, Rule 404(b). at 825-26. See _Montgomery v. State_, 810 S.W. 2d 372 at 387; Zillender v. State, 557 S.W. 2d 515 (Tex. Cr. App. 1977); Tex. R. App. Proc., Rule 52(a); Tex. R. App. Proc., Rule 44.2(a) (harm analysis for harmfulness). See Cleary, McCormick on Evidence, § 190 (3d ed. 1994), at 558. Cf. Morgan v. State, 692 S.W. 2d 877, at 879 (Tex. Cr. App. 1985) (list in Albrecht v. State, 486 S.W. 2d 97 (Tex. Crim. App. 1972) ("was exemplary rather than exhaustive ....")). Should he admit the evidence, then upon timely further request, the trial judge should instruct the jury that the evidence is limited to whatever purpose the proponent has persuaded him it serves. Tex. R. Cr. Evid., Rule 105(a). Montgomery at 388. To avoid this anomaly, appellate courts uphold the trial court's ruling absent an "abuse of discretion." That is to say, "_paraphrased_" ("Montgomery at 391" - if court's ruling within zone of reasonable disagreement Appellate court will not intercede. The trial court's ruling is not, however, unreviewable. Where the appellate court can say, with confidence that by no reasonable perception of common experience can it be concluded that proffered evidence has a tendency to make the existance of a fact of consequence more or less probable than it would otherwise be, then it can be said the trial court abused its discretion to admit the evidence. _Moreover, when it is clear to the appellate court that what was perceived by the trial court as common experience is really no more than the operation of a common prejudice, not born out of reason, the trial court has abused its discretion._

-9-

## Argument Ground One Continued:

In either event the appellate court should <u>recognize that the trial court erred to admit the proffered evidence</u>, and proceed to determine harmfulness under Tex. R. App. Proc., Rule 81 (b)(2). Montgomery at 391. Second, what is the proper role of the appellate court in reviewing the trial court's decision both that evidence does serve a permissible purpose, under Rule 404(b), and that the evidence should not be excluded under rule 403? After argument, with new briefs in hand, we revisit those issues addressed on original submittion. Ultimately we hold that the trial court abused its discretion in failing to exclude the extraneous misconduct at issue in this cause under Rule 403. Montgomery at 386. Petitioner contends that the same decision be given him as here in Montgomery v. State Id., because <u>of the prejudices</u> in this case that occurred at the arrest (retrieving alleged Machete); (failing to read him his Miranda rights, <u>Id.</u>); (Two (2) witnesses of the State having testified to defendant's past criminal history violating defense Motion in Limine), (officer failed to have a Search and Seizure warrant). The Court of Appeals should reverse trial court ruling on the admitted alleged weapon "Machete" and render a ruling as inadmissible evidence, and Further, the law require—<u>if there is no weapen</u> then Texas Penal Code Ann. art. § 22.02 (a)(1)(b) is error, the State overreached the punishment range, where <u>defendant should not have received an enhanced (25) year</u> sentence—Per Penal Code, but, <u>he should have received a Third degree Felony—Sentence</u>—no less than (2) years and no more than Ten (10) years because of the Prior family Code Offense—Texas Penal Code Ann. Art. § 22.01 (a)(2)(b)(2)(A); <u>or acquittal</u>, or reverse and remand back to trial court for new Lesser but correct sentence, or New Trial. See R.R. Vol. 4 of 6, Pg. 19: 22-25, Pg. 20: 1; Pg. 21: 1-3 ("no weapons involved").

- 10 -

**GROUND TWO :** Ineffective Assistance Of Counsel At Trial Court And On Appeal : U.S. 6th, 14th Constitutional Amendments

**FACTS :** Petitioner, Wenford Lettsome, contends that Defense Counsel Deborah Summers allowed (Due Process, Fundamental Unfair Trial and a failure to render Equal Protection Of the Laws), also failed to render defendant his guaranteed Sixth Amendment Right to Counsel's protection; failed to request a timely Mistrial against State's Witnesses Elleston Lettsome and his wife Alphonsine Lettsome who Testified to defendant's prior history and violated Defense Motion In Limine at guilt-innocence phase of trial; failed to object to Police Officer who failed to read defendant his Miranda rights as he was detained—Counsel should have requested for Mistrial and failing to do so caused State's preferred evidence the alleged weapon—"Machete" to be admitted into trial court in error because any illegal Act by Police will disallow illegally obtained evidence to be admitted; Counsel failed to challenge that there was "no weapon" actually used in alleged charged Penal Code; further, Counsel "opened the door" to whether or not defendant had alleged weapon—machete in his hand thus helping the State prove its burden and element to invoke State's Penal Code used based on inferred elements; The appeals Counsel failed to challenge trial court counsel's errors afforementioned, Id., Showed Ineffective Assistance of Appeal Counsel. Such failures by Trial Court Counsel affected defendant on Enhancement of Penal Codes and Sentence and Punishment error on Range of Punishment.

## ARGUMENT GROUND TWO

Petitioner, Wenford Lettsome contends and argues that trial court counsel fell below an objective standard of reasonableness and rendered ineffective assisstance of counsel as well as Appeal counsel on ineffective assistance of Appeal counsel for failing to challenge trial court errors that defense counsel failed to challenge and address those issues. These are U.S. 6th, 14th Constitutional Amendments right violation.

— 11 —

<u>Argument Ground Two Continued</u>:

<u>Strickland v. Washington</u>, 466 U.S. 668 at 687, 104 S.Ct. at 2064; Petitioner bears the burden to prove <u>Two Prong Test</u>. <u>U.S. v. Rivera</u>, 900 F. 2d 1462. <u>First Prong</u>: Counsel failed to: Call for a Mistrial on violation of Defense Motion In Limine against State's Witnesses; Counsel failed to object on illegal evidence being admitted into trial court; Counsel failed to request for a Mistrial because Police Officer failed to read defendant his Miranda Rights; Counsel failed to request timely Instruction to the jury on violation of Motion In Limine; Counsel failed to strongly challenge that no actual weapon was used in this Case No. 1347045 - but it was inferred; Counsel failed to challenge Texas Penal Code § 22.02 (a)(1) against the unambiguous Texas Penal Code § 22.01 (a)(2)(b)(2)(A) both on range of punishment and on Enhancement; Counsel fail to protect defendant against not having a Fundamentally Fair Trial, This is where counsel's errors did undermine the outcome of the trial. <u>Prong Two</u>: "Counsel made errors so serious that counsel was not functioning as 'Counsel' guaranteed by the Sixth Amendment." Counsel deprived defendant of a fundamental fair trial whose results were not reliable, and there is a "reasonable probability" that the outcome would have been different. <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 at 689 (fair trial). "Proceeding would have been different." Id., at 694, 104 s. ct. at 2068." <u>"Inferred Deadly Weapon"</u> used was error. see R.R. Vol. 4 of 6, Pg. 19:22-25, Pg. 20:1; Pg. 21:1-3 (State in Argument stated "no weapons involved,") because there is "no weapon" Tex. Penal Code § 22.02 (a)(1) is in error. Had Counsel challenged The Penal Code - defendant could have been assessed Tex. Penal Code § 22.01 (a)(2)(b)(2)(A). <u>Glover v. U.S.</u>, 531 U.S. 198, 204 (2001) (assuming counsel erred in failing to press grouping argument in sentencing phase of defendant's trial and upon appeal, increase of sentence from (2) years to (10) years to (2) years to (25) years <u>Sentence Constituted prejudice</u> for purposes of ineffective assistance of counsel claim). Counsel failed to request

-12-

## Argument Ground Two Continued:

A Mistrial to the fact that defendant was and is <u>actually innocent</u> and the fact that Police Officer's failure to render to defendant his right to be read his Miranda Rights. Tex. Code Crim. Proc., 38.22 §2(a)(1-5), where defendant did not waive his miranda rights. The prejudice is that in trial court on guilt-innocence the alleged weapon-machete was inferred as a deadly weapon then admitted into trial court was error and a illegal act of the government-Police Officer and trial court-State, the alleged machete was inadmissible and Counsel failed to challenge based on these facts. See R.R. Vol. 3 of 6, Pg. 83:14-25 Thru Pg. 84:1-11, Id., in transcripts. Fruit of The Poisonous Tree — Wong Sun v. U.S., 371 U.S. 471, 487-88, 83 S.Ct. 407, 417, 9 L.Ed. 2d 441 (1963) (holding that evidence derived from an illegal act cannot be used at trial). De La Paz v. State (App. 8 Dist. 1995) 901 S.W. 2d 571, PDR, ref'd.; Tex. Code Crim. Proc. art. 38.23(a). See Rickman v. Bell, 131 F.3d 1150, 1156-60 (6th Cir. 1997), 265 F.3d 372, 384 (6th Cir. 2001) (counsel's failure to seek suppression of evidence clearly seized in violation of 4th Amendment was prejudicial because evidence would have been excluded had counsel objected. <u>"Counsel Opened The Door."</u> Counsel failed to subpoena defense witnesses to testify to defendant's innocence. His Mother Leonora Penn, age 80, Travina Lettsome-Daughter 19, Emanual Thomas -neighbor, age 80, and Sabrina M. Merrick-39, Common Law Wife. See Paval v. Hollins, 261 F.3d 210, 228 (2d Cir. 2001) (Counsel's failure to prepare defense and call witnesses prejudiced defendant, especially in light of weakness of prosecution's case). Appeals Counsel failed to challenge (same) errors of Trial court counsel was ineffective assistance of Appeal counsel as well. See Smith v. Robbinson, 528 U.S. 259, 120 S.Ct. 746, 145 L.Ed. 2d 756 (2000).

## PRAYER

All Premises Considered, Petitioner prays that this Honorable Court grant him relief requested: acquittal, reverse and remand for new trial, corrected Penal Code to §22.01(a)(2)(b)(2)(A), a clear showing of "No Weapon," ineffective Counsel.

-13-

T.C. CAUSE NO. 01347045 :
APPEAL CAUSE NO. 01-13-00532-CR :

## AFFIDAVIT OF WENFORD LETTSOME

|  | ON |
| --- | --- |
| STATE OF TEXAS | § PETITION FOR |
| COUNTY OF HARTLEY | § DISCRETIONARY REVIEW |

Before me the undersigned authority, Petitioner, Pro-se, Affiant, Wenford Lettsome, TDCJ-ID No. 01864369, submit this Affidavit as SWORN, that I am over 21 years of age, and I am competent to make this Affidavit. All facts contained Herein has been read and agreed to by me, and they are true and correct.

I, Affiant, Wenford Lettsome, attest that I am Actually Innocent of the alleged charged offense ["threaten Elleston Lettsome with imminent bodily injury by using and exhibiting a deadly weapon, namely, a machete"]. The evidence adduced at trial court was inferred, but, and it was rendered for those purposes, however, when Police Officer failed to read defendant his Miranda Rights-T.C.C.P., 38.22 §2(a)(1-5), the the legislature disallowed the Judge and Jury to infer that the alleged weapon-Machete was used in charged offense Case No. 01347045, because this said alleged evidence was illegally obtained by Officer Rodney Chaison, Jr., and Judge, Mark Kent Ellis, abused his discretion on guilt-innocence and punishment phase to have not made the correct ruling according to U.S. Constitution. This case should be acquitted, corrected to Tex. Penal Code §22.01(a)(2)(b)(2)(A), reversed and remanded for a new trial and for said proceedings, And (P.D.R.) should be granted, because U.S. 4th, 14th Const. Amends., T.C.C.P., 38.23(a).

## SWORN DECLARATION

I, Wenford Lettsome, affiant, do declare under penalty of perjury, pursuant to 28 U.S.C.A. § 1746, that the foregoing Affidavit and facts are true and correct to the best of my knowledge.

Petitioner, Affiant, Pro-se, _Wenford Lettsome_
Wenford Lettsome #01864369
Dalhart Unit No. 072, 11950 FM 998
Dalhart, Texas 79022-7624

Executed on this 10 day of March, 2015.

T.C. CAUSE NO. 01347045

APPEAL CAUSE NO. 01-13-00532-CR

---

## CERTIFICATE OF SERVICE

---

I, Wenford Lettsome, TDCJ-ID No. 01864369, Pro-se, Petitioner, do certify that a true and correct copy of the foregoing Petition for Discretionary Review, was sent to the Court of Criminal Appeals of Texas, P.O. Box 12308, Capitol Station, Austin, Texas 78711; sent first class U.S. Mail, prepaid, sent from the Dalhart mailing system; on this the 10 day of March, 2015.

Petitioner, _Wenford Lettsome_
Wenford Lettsome
TDCJ-ID NO. 01864369
Dalhart Unit No. 072
11950 FM 998
Dalhart, Texas 79022-7624

## SWORN DECLARATION

I, Wenford Lettsome, TDCJ-ID. NO. 01864369, Pro-se, Petitioner, do declare under penalty of perjury pursuant to 28 U.S.C.A. § 1746, that the foregoing (P.D.R.) and facts are true and correct to the best of my knowledge.
Executed on this the 10 day of March, 2015.

Petitioner, _Wenford Lettsome_
Wenford Lettsome
TDCJ-ID. No. 01864369

Opinion issued December 18, 2014



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――

## NO. 01-13-00532-CR

―――――――――――

## WENFORD LETTSOME, Appellant

## V.

## THE STATE OF TEXAS, Appellee

On Appeal from the 351st District Court
Harris County, Texas
Trial Court Case No. 1347045

## MEMORANDUM OPINION

A jury found appellant, Wenford Lettsome, guilty of the offense of aggravated assault of a family member.[1] After appellant pleaded true to the allegation in one enhancement paragraph that he had been previously convicted of a felony offense, the trial court assessed his punishment at confinement for 25 years. The trial court also found that he used a deadly weapon, namely, a machete, in the commission of the offense. In two issues, appellant contends that the evidence is legally insufficient to support his conviction and the trial court erred in denying him the right of allocution[2] prior to the pronouncement of his sentence.

We affirm.

## Background

The complainant, Elleston Lettsome, testified that he lived in a house with his wife, Alphonsine Lettsome, his cousin, appellant, appellant's brother, Perseus Penn, and various other individuals. He explained that appellant had "moody ways," would start arguments, and was "very controlling." And appellant had previously threatened the complainant, stating, "Bitch, I will bust you up, you know that?" However, appellant did not have a weapon on him at the time he

---

[1] See TEX. PENAL CODE ANN. § 22.02(a)(2) (Vernon 2011); see also TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2014); TEX. FAM. CODE ANN. §§ 71.0021, 71.003, 71.005 (Vernon 2014).

[2] See TEX. CODE CRIM. PROC. ANN. art. 42.07 (Vernon 2006).

made the threat. The complainant further explained that appellant's threats had been "[g]etting worse" over time.

On May 6, 2012, the complainant, while preparing a meal in the kitchen, overheard appellant say unprovoked to Alphonsine, "If you touch me, I bust your head open." The complainant then confronted appellant, asking him why he was "swearing at [his] wife." In response, appellant "c[a]me up in [his] face" and said, "You want to do something about it?" The complainant then, with his Bible, went outside to sit on the front porch with Penn. Alphonsine also walked outside and sat in the car parked in the driveway. The complainant then proceeded to discuss Bible scriptures with Penn.

Appellant subsequently exited the house, "came up" to the complainant with a "machete in his hand," and "sharpen[ed]" it. He "walked real close to [the complainant], real close" and, while "[t]he machete was in his hand," told the complainant, "I'm going to chop you up." From approximately five to six feet away from the complainant, appellant spoke directly to him and "[p]oint[ed] right at [him]" with the machete. He held the machete "like he was actually chopping," and he "pointed" and "shook" it at the complainant.

The complainant felt "fearful," "scared," and "threatened," and he "really" thought that appellant would "chop [him]." The complainant "fear[ed] for [his] life" and thought that appellant "would attack [him] with the machete for real." He

3

therefore went over to the car where Alphonsine was sitting, and they left the house because they were both afraid.

Alphonsine testified that on May 6, 2012, while appellant was in the living room of the house cleaning, she "ease[d] around" him in order to get to the kitchen. She explained that although she did not touch appellant, he told her that "if [she] had touched him, he would bust [her] head open." Appellant followed Alphonsine into the kitchen and continued to say that "if [she] . . . touch[ed] him, he was going to bust [her] head open." The complainant, who had heard appellant, told him to "[l]eave [Alphonsine] alone." She then "went outside" to "avoid the angry man" and sat in the car. She felt "very bad," "upset," "scared," and "threatened."

While Alphonsine sat in the car, appellant "came out" of the backdoor of the house "with the machete in his hand." Appellant held the machete by the handle, with its blade "pointed out," and he "was very, very angry." Alphonsine, however, lost sight of appellant as he walked, and she could not hear what was happening outside of the car. Although she did not see appellant "point the machete" at the complainant, the complainant subsequently came over to the car, and they left the house to get away from appellant.

Alphonsine described living with appellant as "chaos." He would get "[a]ngry about certain things," and when angry, "[h]e just goes on and on talking," "raise[s] his voice," "use[s] bad language," and acts "like he want[s] to fight."

4

Alphonsine explained that when appellant does this, she feels "[r]eally upset" and "scare[d]."

Penn testified that on May 6, 2012, while he sat outside the house with the complainant reading the Bible, appellant "c[a]me outside with a machete, sharp like this." He then said to the complainant, "I'm going to chop you up. . . . You motherfucker, I going to chop you up." Appellant, who "was mad," told the complainant that "he [was] going to chop him up into ground wheat." Penn noted that appellant also had a file in his hand and "was sharpening the machete" as he approached the complainant. He "wav[ed]" the machete and "pointed" it at the complainant when he said that he was going to chop him up. Penn estimated that appellant stood approximately eight to ten feet away from the complainant at the time that he threatened him, and Penn believed that appellant intended to hurt the complainant. The complainant, who did "nothing," then "got in the car [with Alphonsine] and . . . left." After Penn explained that he had used the machete to cut vegetation overgrowth around the house, the trial court admitted it into evidence.

Houston Police Department Officer R. Smajstrla testified that a machete is "a long . . . knife used to cut weeds and shrubs." He explained that machetes vary in lengths, but the ones he has seen are "1 to 2 feet in length." Based on his

5

experience, he opined that a machete is a deadly weapon because it can cause serious bodily injury due to the length and sharpness of its blade.

## Sufficiency of the Evidence

In his first issue, appellant argues that the evidence is legally insufficient to support his conviction because the State did not establish "that the machete . . . [a]ppellant allegedly used qualified as a deadly weapon."

We review the legal sufficiency of the evidence by considering all of the evidence "in the light most favorable to the prosecution" to determine whether any "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S. Ct. 2781, 2788–89 (1979). Our role is that of a due process safeguard, ensuring only the rationality of the trier of fact's finding of the essential elements of the offense beyond a reasonable doubt. *See Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). We give deference to the responsibility of the fact finder to fairly resolve conflicts in testimony, weigh evidence, and draw reasonable inferences from the facts. *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). However, our duty requires us to "ensure that the evidence presented actually supports a conclusion that the defendant committed" the criminal offense of which he is accused. *Id.*

6

A person commits an assault if he "intentionally, knowingly, or recklessly threatens another with imminent body injury." TEX. PENAL CODE ANN. § 22.01(a)(2) (Vernon Supp. 2014). A person commits the offense of aggravated assault if he "commits assault as defined in [section] 22.01 and [he] . . . uses or exhibits a deadly weapon during the commission of the assault." *Id.* § 22.02(a)(2) (Vernon 2011). A "deadly weapon" includes "anything that in the manner of its use or intended use is capable of causing death or serious bodily injury." *Id.* § 1.07(a)(17)(B) (Vernon Supp. 2014). "'Bodily injury' means physical pain, illness, or any impairment of physical condition." *Id.* § 1.07(a)(8). And "'[s]erious bodily injury' means bodily injury that creates a substantial risk of death . . . ." *Id.* § 1.07(a)(46).

Generally, a machete is "a large heavy knife used for cutting sugarcane and underbrush and as a weapon." *Hill v. State*, No. 13-05-00274-CR, 2006 WL 2382787, at *3 (Tex. App.—Corpus Christi August 17, 2006, no pet.) (mem. op., not designated for publication) (internal quotation marks omitted); *see also Francis v. State*, No. 01-11-01019-CR, 2013 WL 1694854, at *6 (Tex. App.—Houston [1st Dist. Apr. 18, 2013) (noting that machete is "a knife with a blade exceeding five and one-half inches"), *aff'd*, 428 S.W.3d 850 (Tex. Crim. App. 2014). While a knife is not a deadly weapon per se, it may be a deadly weapon based on the nature of its use or intended use. *Thomas v. State*, 821 S.W.2d 616, 619–20 (Tex. Crim.

7

App. 1991); *Miller v. State*, 177 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 2004, no pet.). In fact, almost anything can be a deadly weapon depending upon the evidence shown. *Lane v. State*, 151 S.W.3d 188, 191 n.5 (Tex. Crim. App. 2004).

To determine whether a particular knife is a deadly weapon, the following may be considered: (1) the size, shape, and sharpness of the knife; (2) the manner of its use or intended use; (3) the nature or existence of inflicted wounds; (4) the proximity of the defendant and the complainant; (5) the use of any brandishing motions; (6) statements, including threats, made by the defendant; (7) the complainant's fear of serious bodily injury or death; and (8) evidence of the knife's capacity to produce death or serious bodily injury. *See Blain v. State*, 647 S.W.2d 293, 294 (Tex. Crim. App. 1983); *Wingfield v. State*, 282 S.W.3d 102, 107 (Tex. App.—Fort Worth 2009, pet. ref'd); *Victor v. State*, 874 S.W.2d 748, 751 (Tex. App.—Houston [1st Dist.] 1994, pet. ref'd). Notably, it is not necessary to show that a complainant suffered any injury to establish that a particular knife is a deadly weapon. *Victor*, 874 S.W.2d at 751.

Further, a fact finder may consider all the surrounding facts in determining whether a knife constitutes a deadly weapon. *Blain*, 647 S.W.2d at 294; *Garcia v. State*, 17 S.W.3d 1, 4 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). Evidence is sufficient to show that a knife was used in a manner that constitutes a deadly

8

weapon when the knife was "displayed in a manner conveying an express or implied threat that serious bodily injury or death [would] be inflicted." *Billey v. State*, 895 S.W.2d 417, 422 (Tex. App.—Amarillo 1995, pet. ref'd). Expert or lay testimony may be "independently sufficient" to support a deadly weapon finding. *Banargent v. State*, 228 S.W.3d 393, 398–99 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd).

Appellant argues that "[t]he [e]vidence [d]id [n]ot [e]stablish the [m]achete was [c]apable of [c]ausing [s]erious [b]odily [i]njury or [d]eath" because "the machete held by . . . [a]ppellant was dull," "[t]here was no testimony presented as to the length of the machete . . . [or] aspects of th[e] particular machete [which] gave it the potential to do harm," and Officer Smajstrla only spoke "in general terms and not specifically about the machete recovered" in this case.

It is true that Officer Smajstrla did generally explain that a machete is "a long . . . knife used to cut weeds and shrubs" and may cause serious bodily injury due to the length and sharpness of its blade. However, the complainant specifically testified that appellant "walked real close to [him]" with "[t]he machete in his hand," which appellant was "sharpening." And appellant, while holding the machete, expressly told the complainant that he was "going to chop [him] up." Standing approximately five to six feet away from him, appellant spoke directly to the complainant and "[p]oint[ed] right at [him]" with the machete, and he held the

9

machete "like he was actually chopping" and "pointed" and "shook" it at the complainant. The complainant explained that he "really" thought that appellant was going to "chop [him]," and he felt "fearful," "scared," and "threatened." The complainant "fear[ed] for [his] life" and thought that appellant "would attack [him] with the machete."

Penn similarly testified that appellant "c[a]me outside with a machete, sharp like this," and he told the complainant, "I'm going to chop you up. . . . You motherfucker, I going to chop you up." Appellant also said that "he [was] going to chop [the complainant] up into ground wheat." He "was mad," and he sharpened the machete as he approached the complainant, "wav[ed]" it, and "pointed" it at the complainant as he said that he was going to chop him up. Penn estimated that appellant stood approximately eight to ten feet away from the complainant at the time he threatened him. And Penn believed that appellant intended to hurt the complainant.

Contrary to appellant's assertions, there is no evidence in this case that the machete was "dull." Instead, both the complainant and Penn attested to the machete's sharpness. Further, although neither the complainant, Penn, nor Officer Smajstrla specifically described the machete used by appellant, we note that the machete itself was admitted into evidence, thereby allowing the jury to observe its characteristics. *See Rodriguez v. State*, 129 S.W.3d 551, 556 (Tex. App.—Houston

[1st Dist.] 2003, pet. ref'd) ("[B]ecause the knife found on [defendant] was admitted into evidence, there was no need for testimony about the size and shape of the knife, as [defendant] contends on appeal."); *see also Robertson v. State*, 163 S.W.3d 730, 734 (Tex. Crim. App. 2005) (explaining when "knife was admitted into evidence, the fact-finder was in a position to observe all of [its] characteristics").

In support of his argument that the evidence is legally insufficient to establish that the machete was a deadly weapon, appellant relies on *Davidson v. State*, 602 S.W.2d 272 (Tex. Crim. App. 1980). However, his reliance is misplaced. In *Davidson*, a jury convicted the defendant of the offense of aggravated robbery, and he asserted on appeal that the evidence was insufficient to prove that the knife he brandished during the robbery was a deadly weapon. 602 S.W.2d at 272. The Texas Court of Criminal Appeals agreed, holding that the evidence was "insufficient to show that the defendant used or intended to use the knife so as to inflict serious bodily injury or death." *Id.* at 274. In reaching its decision, the court noted that the complainant suffered no wounds and he testified that the blade of the knife was, at most, three inches long, he was five or six feet away from the defendant, and he feared seriously bodily harm or death because a friend of his had been previously hurt in a similar situation. *Id.* The knife was not introduced into evidence. *Id.*

11

Notably, unlike in *Davidson*, the jury here was able to view the machete used by appellant and observe and inspect its characteristics because it was admitted into evidence. The jury did not solely have to rely on testimony regarding the machete's characteristics. *See Gosdin v. State*, No. 2-08-274-CR, 2009 WL 1905378, at *2 (Tex. App.—Fort Worth July 2, 2009, pet. ref'd) (mem. op., not designated for publication) (distinguishing *Davidson* because in *Gosdin* "actual knife was admitted into evidence, allowing the jury to assess whether the knife was capable of causing death or serious bodily injury"); *Hatchett v. State*, 930 S.W.2d 844, 848–49 (Tex. App.—Houston [14th Dist.] 1996, pet. ref'd) (distinguishing *Davidson* where knife used by defendant in *Hatchett* admitted into evidence and holding evidence sufficient to show defendant used or exhibited deadly weapon); *Nunez v. State*, No. 01-95-00106-CR, 1995 WL 679078, at *1 (Tex. App.—Houston [1st Dist.] Nov. 16, 1995, pet. ref'd) (not designated for publication) (distinguishing *Davidson* because knife used to commit robbery in *Nunez* admitted into evidence and holding evidence sufficient to support deadly weapon finding).

Further, unlike the defendant in *Davidson*, appellant did not simply hold the knife in his hand, but instead held the machete "like he was actually chopping," and "pointed," "shook," and "wav[ed]" it at the complainant. *See McAnally v. State*, Nos. 05-91-01567, 05-91-01568-CR, 1993 WL 52469, at *3 (Tex. App.—

12

Dallas Feb. 26, 1993, no pet.) (not designated for publication) (distinguishing *Davidson* because knife admitted into evidence in *McAnally* and defendant "made slashing motions at the police officers with the knife, unlike Davidson who simply held the knife in his hand").

And, the complainant in this case feared for his life because of the manner in which appellant held the machete, "like he was actually chopping" and "pointed" and "shook" it at him. Conversely, the complainant in *Davidson* merely feared serious bodily injury or death because his friend had been injured in a similar incident—in other words, the complainant's fear had nothing to do with the manner in which the defendant actually used the knife. *See Vasquez v. State*, No. 07-04-0482-CR, 2005 WL 2000705, at *3 (Tex. App.—Amarillo Aug. 19, 2005, no pet.) (mem. op., not designated for publication) (distinguishing *Davidson* where complainant's fear in *Vasquez* was "due to the manner in which [the rock] was being used," unlike complainant in *Davidson* who "feared the weapon because his friend had been injured in a similar encounter").

Here, the evidence presented at trial revealed that: (1) the machete was sharp and large enough for Penn to use it to cut vegetation overgrowth; (2) a machete, in general, is a long knife, capable of inflicting serious bodily injury due to the length and sharpness of its blade; (3) appellant, at the time of the offense, was "real close" to the complainant; (4) appellant held the machete "like he was

13

actually chopping" and "pointed," "shook," and "wav[ed]" it at the complainant; (5) appellant told the complainant, "I'm going to chop you up. . . . You motherfucker, I going to chop you up" and that "he [was] going to chop him up into ground wheat"; and (6) the complainant felt threatened and afraid, thought appellant would attack him with the machete, and feared for his life. *See Blain*, 647 S.W.2d at 294; *Wingfield*, 282 S.W.3d at 107; *Victor*, 874 S.W.2d at 751. The jury also was able to view the machete used by appellant because it was admitted into evidence.

Viewing the evidence in the light most favorable to the jury's verdict, we conclude that the jury could have reasonably found that the machete was capable of causing death or serious bodily injury. Accordingly, we hold that the evidence is legally sufficient to support appellant's conviction of the offense of aggravated assault of a family member.

We overrule appellant's first issue.

### Right of Allocution

In his second issue, appellant argues that the trial court erred in denying him the right of allocution because it failed to inquire, prior to pronouncing his sentence, as to whether appellant had anything to say as to why the sentence should not be pronounced.

14

The Texas Code of Criminal Procedure provides:

Before pronouncing sentence, the defendant shall be asked whether he has anything to say why the sentence should not be pronounced against him. The only reasons which can be shown, on account of which sentence cannot be pronounced, are:

1. That the defendant has received a pardon from the proper authority, on the presentation of which, legally authenticated, he shall be discharged[;]

2. That the defendant is incompetent to stand trial; and if evidence be shown to support a finding of incompetency to stand trial, no sentence shall be pronounced, and the court shall proceed under Chapter 46B; and

3. When a person who has been convicted escapes after conviction and before sentence and an individual supposed to be the same has been arrested he may before sentence is pronounced, deny that he is the person convicted, and an issue be accordingly tried before a jury, or before the court if a jury is waived, as to his identity.

TEX. CODE CRIM. PROC. ANN. art. 42.07 (Vernon 2006). The purpose of this provision is to allow a defendant to alert the trial court to any legal reason that may not be of record that bars the imposition of punishment. *Eisen v. State*, 40 S.W.3d 635 (Tex. App.—Waco 2001, pet. ref'd).

The State asserts that appellant failed to preserve this issue for our review. To preserve error for appeal, a party is required to make a timely, request, objection, or motion to the trial court and obtain an express or implied ruling. *See* TEX. R. APP. P. 33.1; *Tenon v. State*, 563 S.W.2d 622, 623–24 (Tex. Crim. App. 1978) (holding defendant failed to preserve issue for review because did not object

15

to trial court's "failure to inquire of the appellant if she had anything to say why the sentence should not be pronounced against her"); *Nicholson v. State*, 738 S.W.2d 59, 63 (Tex. App.—Houston [1st Dist.] 1987, no pet.) ("No error is preserved, however, when an appellant does not object to the court's failure to provide appellant his right of allocution or when appellant fails to timely assert the existence of any statutory reason set forth in art. 42.07 to prevent pronouncement of sentence."). Moreover, the complaining party on appeal must have clearly conveyed to the trial court the particular complaint raised on appeal by "'let[ting] the trial judge know what he wants [and] why he thinks he is entitled to it, . . . clearly enough for the judge to understand him at the time when the judge is in the proper position to do something about it.'" *Norton v. State*, 434 S.W.3d 767, 771 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (quoting *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009)).

In his brief, appellant candidly admits that,

> the record does not contain any indication that the three legal reasons laid out in article 42.07 as to why sentencing should not be pronounced are present. That is, there is no indication that the [a]ppellant has received a pardon, was incompetent to stand trial, or that he escaped custody following conviction and was subsequently rearrested.

Nevertheless, appellant asserts that he preserved error through the following exchange:

16

THE COURT: All right. Stand up, Mr. Lettsome.

. . .

THE COURT: I'm going to find the punishment enhancement paragraph to be true.

Upon that, I'm going to sentence you, Mr. Lettsome, to 25 years confinement.

There will be an affirmative finding of a deadly weapon. You will get credit for your back time. See the bailiff.

. . .

[Appellant]: *Your Honor, can I say something?*

THE COURT: Step in the back.

[Appellant]: Thank you, Ms. Summers.

[Trial counsel]: You're welcome, sir.

(Emphasis added.)

Neither appellant nor his trial counsel clearly conveyed to the trial court either a request that appellant be allowed to exercise his right of allocution or an objection that the trial court violated his right. Simply, asking a trial court "can I say something?" is not sufficient to preserve error. *See* TEX. R. APP. P. 33.1(a)(1)(A) (requiring objecting party to "state[] the grounds for the ruling that the complaining party sought from the trial court with sufficient specificity to make the trial court aware of the complaint"); *Norton,* 434 S.W.3d at 771

17

(defendant's question, "[c]an I talk to you?" did not preserve error regarding trial court's denial of right of allocution). Accordingly, we hold that appellant has not preserved this issue for appellate review.

## Conclusion

We affirm the judgment of the trial court.

Terry Jennings
Justice

Panel consists of Justices Jennings, Sharp, and Massengale.

Do not publish. TEX. R. APP. P. 47.2(b).

18